UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------- x
SMART STUDY CO.,                 :
                                 :
            Plaintiff,           :
                                 :
      v.                         :            20-cv-7889 (JSR)
                                 :
BICHHA123, ET AL.,               :
                                 :
            Defendants.          :
------------------------------- x

------------------------------- x
SMART STUDY CO.,                 :
                                 :
            Plaintiff,           :
                                 :
      v.                         :            20-cv-7890 (JSR)
                                 :
B+BABY STORE, ET AL.,            :
                                 :
            Defendants.          :
------------------------------- x

## OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

"Baby Shark Dance," a simple yet catchy children's song, has now been viewed more than 7.3 billion times – nearly once per person worldwide.[1]  The video features children dancing in front of underwater motifs, consisting primarily of a family of smiling sharks.  That ubiquitous smiling shark image now appears on an array of children's products, which brings us to this case.

---

[1] Baby Shark Dance | Most Viewed Video on Youtube | PINKFONG Songs for Children, https://www.youtube.com/watch?v=XqZsoesa55w.

Plaintiff Smart Study created the Baby Shark Dance through its preschool brand Pinkfong and now owns intellectual property relating to the video and the characters depicted therein. It filed these actions against online merchants who sell smiling-shark products that allegedly infringe the Baby Shark mark. See Compl., ECF No. 10; Compl. Ex. D, ECF No. 10-1.

On September 24, 2020, Smart Study moved ex parte for orders (1) temporarily enjoining defendants' sale of the allegedly infringing products, (2) temporarily compelling online merchant marketplaces and financial institutions to freeze defendants' shops and accounts, respectively, (3) requiring defendants to show cause why a preliminary injunction should not issue, (4) authorizing service by email and website publication, and (5) authorizing expedited discovery. This Court granted the requested relief (collectively, the temporary restraining order or "TRO") and set an order-to-show-cause hearing for October 2, 2020. The Court also required Smart Study to post $10,000 bond in each case.

This memorandum concerns the only defendant in these actions to appear through counsel, The Primrose Lane, LLC ("Primrose"). Primrose argues that it offers for sale a legitimate Baby Shark product manufactured, with Smart Study's consent, for sale by Kohl's. Primrose purchased the product from a distributor as overstock. Primrose strenuously objects to being cast as a fly-

by-night operation willing to abscond with ill-gotten gains and contends that the TRO has caused lost sales, legal fees, and labor costs.

After Primrose stated its objections at the order-to-show-cause hearing, the Court permitted it to file an expedited motion to vacate the TRO, which it duly filed on October 7. In that motion, Primrose also requested that it be permitted to seek damages against the bond. The next day, Smart Study voluntarily withdrew its claims against Primrose. The Court then authorized Primrose to file a motion for damages pursuant to Rule 65(c), Fed. R. Civ. P., which it did. For the reasons that follow, the motion is granted and the Court awards to Primrose $5,400 in damages.

## Discussion

Courts sitting in equity have long required movants to post bonds before they would issue ex parte TROs. The bond shifts from defendants to plaintiffs some of the risk that a TRO granted after only one side has been heard might be wrongfully granted. See generally Nokia Corp. v. InterDigital, Inc., 645 F.3d 553, 557 (2d Cir. 2011). Accordingly, "a party subjected to a [TRO] in district court who is later found to have been 'wrongfully enjoined' may recover against the security bond damages suffered as a result of the injunction." Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1051 (2d Cir. 1990).

Primrose is entitled to recover only if it was wrongfully

enjoined and if it suffered damages proximately caused by the TRO. The Court takes up those two questions in turn.

## I.   Whether Primrose Was Wrongfully Enjoined

The first question before the Court is whether Primrose was "wrongfully enjoined," meaning that it "had the right to do the enjoined act." Blumenthal, 910 F.2d at 1054. This inquiry generally occurs "in hindsight, in light of the ultimate decision on the merits after a full hearing." Id. Thus, courts addressing this question look beyond the limited record available at the TRO or preliminary injunction stage. See id. ("The conclusion that an injunction later dissolved was 'wrongful' . . . does not necessarily imply that the district court abused its discretion in granting the relief in the first place.") (punctuation altered).

Here, however, Smart Study dismissed its claims as soon as Primrose moved to vacate the TRO, so the Court had no occasion to conduct a "full hearing" or issue a "decision on the merits" as contemplated by the Second Circuit in Blumenthal. Nor has Primrose been given the benefits of discovery and cross-examination. Under such circumstances, it would defy the purposes of Rule 65(c) to require Primrose to prove its innocence.

This Court instead concludes that when the issuance of a TRO is followed by the plaintiff's prompt voluntary withdrawal of the complaint as to a given defendant (other than as part of a settlement), that withdrawal establishes as a matter of law that

-4-

the defendant was wrongfully enjoined.   At least one court has already followed this approach.   In a report and recommendation adopted by then-District Judge Reena Raggi, Magistrate Judge Pohorelsky reasoned:

> Although there has been no determination, after a full hearing on the merits, that the defendants had at all times the right to distribute and sell the product at issue, they were deprived of that opportunity by the plaintiff's abandonment of the action.   The plaintiff should not be able to escape liability under the bond by its own default.

B.G. Soft LTD v. BG Soft International, Incl., 01-CV-17, 2002 WL 1467744 (E.D.N.Y. Apr. 29, 2002).   This Court agrees.

Furthermore, even assuming for the sake of argument that the Court is required to make a factual finding, the Court, based on the present concededly scant record, would nevertheless also find as a factual matter that Primrose was wrongfully enjoined. Primrose offers declarations by one of its co-owners, Terrie Weitzel, describing its efforts to ensure that it does not traffic in counterfeit goods.   Weitzel avers that Primrose purchased the applicable Baby Shark products from a reputable dealer, Rex Distributors, Inc., who represented that these were authentic goods purchased "from the same manufacturer which makes them for Kohls," with Smart Study's licensure.   Second Weitzel Decl., ECF No. 29-1, at 1.

Smart Study responds with attorney speculation; counsel compares the image on Kohl's website with the image on Primrose's

Wish.com website, pointing out certain small differences that allegedly show that Primrose's product is phony. See Opp. to Mot. to Vacate TRO, ECF No. 28, at 10 (showing the images side by side). Smart Study also offers the declaration of Yeonbin Jeong, the CEO of Pinkfong USA, a Smart Study subsidiary. ECF No. 42. Jeong avers that she reached out to the "manufacturer which produces the Jumping Beans line of Baby Shark products for Kohl's to inquire whether they sold the Jumping Beans products to Rex" and "was informed by the manufacturer that they never authorized the sale of the Jumping Beans line of Baby Shark products to Rex." Jeong Decl., ECF No. 42, at 2-3.

If the manufacturer offered such testimony at a full hearing on the merits, it would invite further inquiry, but on the present record the Court cannot help but note that it is hearsay, and unparticularized and conclusory hearsay at that. See id. at 3 ("I was informed by the manufacturer that they never authorized the sale . . . to Rex.") (emphasis added). To be sure, one of Primrose's key assertions is also hearsay. See Second Weitzel Decl., ECF No. 29-1, at 1 ("[W]e were advised by Rex Distributors, Inc. that the t-shirts had been purchased from the same manufacturer which makes them for Kohls . . . .") (emphasis added). But the ultimate burden is plaintiff's. Moreover, Primrose has offered the testimony of a declarant who ordered these t-shirts and who has personally handled them, along with an invoice from

the distributor.   Such evidence outweighs Smart Study's attorney's speculation.

Accordingly, both as a matter of law and as a matter of fact, the Court finds for the purpose of this motion that Primrose was wrongfully enjoined.

## II.  Whether, and to What Extent, the TRO Damaged Primrose

Because Primrose was wrongfully enjoined, the Court next turns to the question of damages.   "[A]    wrongfully    enjoined party is entitled to a presumption in favor of recovery."   Nokia, 645 F.3d at 559.   The movant may only recover, however, damages "shown to have been proximately caused by the injunction . . . up to the amount of the bond."   Blumenthal, 910 F.2d at 105.   "'[W]hile the fact of damages must be established definitely, the amount need not be proven mathematically.'"   Intercapital Debt Trading Ltd. v. Cantor Fitzgerald Inc., No. 94 CIV 9275 (LMM), 1996 WL 167820, at *2 (S.D.N.Y. Apr. 10, 1996) (quoting 11A Charles A. Wright et al., Federal Practice and Procedure § 2973 at 467 (2d ed. 1995)).

Undisputed evidence shows that shortly after the Court issued the TRO, Smart Study served it on financial institutions and service providers, including the online marketplace Wish.com, which froze Primrose's online storefront.   Then, to comply with the Court's orders, Primrose sought the advice of counsel and, in order to comply with the TRO, promptly expended approximately 60

person-hours removing its Baby Shark listings from other online storefronts.  When Smart Study withdrew its claims and notified the financial institutions and service providers that the TRO no longer applied, Wish unfroze Primrose's online storefront. Primrose then expended additional labor re-listing the products that it had removed from other online storefronts.

Primrose thus argues that it suffered lost sales, attorney's fees, and labor costs.  Primrose estimates Primrose's losses in each of these categories, but the estimates have evolved, even in the short course of these proceedings, as follows:

|  | Original alleged damages (reply in support of mot. to vacate TRO) | Revised alleged damages (Rule 65(c) mot. for damages) |
|---|---|---|
| Lost sales | $500 (wish.com) + $1300 (other platforms) = $1800 | $1200 (wish.com) + $1500 (other platforms) = $2700 |
| Attorney's fees | $1500 | Not mentioned |
| Labor | $12,000 | $27,500 |

Upon review, while the Court concludes that Primrose has "established definitely" that it was damaged in each of these categories, see Intercapital, 1996 WL 167820, at *2, its support

for the specific figures is somewhat problematic. In assessing the quantum of damages, the Court had hoped to rely upon invoices, attorney's time entries, revenue spreadsheets and the like; that is why it directed Primrose to provide "specific, detailed evidentiary submissions to demonstrate the damages that it claims." Order, ECF No. 16, at 3. Nevertheless, the Court must work with the evidence it has, and "the amount need not be proven mathematically." Intercapital, 1996 WL 167820, at *2. The Court estimates the damages in each category as follows.

With respect to lost sales, Primrose's estimates are "based on a simple review of our sales on wish.com and our sales of 'Baby Shark' products on the other platforms for the similar period last year and in the months leading up to the injunction." Third Weitzel Decl., ECF No. 45, at 1. The Court accepts this method. However, the Court will use Weitzel's earlier estimate of $1800 in lost sales, rather than her more recent estimate of $2700, because Primrose did not adequately document the $900 increase.

With respect to attorney's fees, the Court accepts Weitzel's representation that Primrose incurred approximately $1500 in attorney's fees for legal advice regarding compliance with the TRO. Smart Study responds that legal fees are not recoverable. Primrose counters that "legal fees incurred in litigating the propriety of the TRO aren't recoverable," but that "fees incurred in complying with it are recoverable." Reply in Support of Mot.

to Vacate TRO, ECF No. 29, at 4. Primrose is correct: legal fees related to compliance, rather than litigation, are recoverable. See Nokia Corp. v. InterDigital, Inc., 645 F.3d 553, 560 (2d Cir. 2011) ("InterDigital does not seek to recover attorneys' fees or legal expenses that it incurred in litigating the injunction. Instead, it seeks to recover fees and expenses that it incurred in complying with the injunction. Recovery of such costs, incurred in collateral proceedings required by the terms of a wrongful injunction, does not contravene the American Rule or its Rule 65(c) analogue.").

Finally, with respect to labor, Weitzel avers that she and her co-owner spent approximately 140 hours complying with the TRO. She estimated the value of that labor by, first, "dividing the average monthly revenues in the months leading up to the injunction by the average number of hours worked by my partner and [me] each month." Third Weitzel Decl., ECF No. 45, at 2. She "then multiplied this amount by the number of hours we had to divert from revenue producing activities to comply with the injunction . . . [and] putting those products back up for sale after the injunction was lifted." Id.

Weitzel's revenue-based approach to calculating labor costs is too speculative and depends too much on information that was not provided to the Court in any documented fashion. Lacking sufficient evidence of the value of the co-owners' labor, the Court

will award a conservative pay rate of $15 per hour for 140 hours, for a total of $2100.

In sum, the Court will award $1800 for lost sales, $1500 for attorney's fees, and $2100 for labor, for a total of $5400 in damages. While these calculations are necessarily imprecise given the evidence submitted, the Court finds that they appropriately compensate Primrose for its losses.

For the foregoing reasons, Primrose's motion for damages is granted. The Clerk's Office is respectfully directed to deduct $5,400 from the bond posted by Smart Study in Smart Study v. B+Baby Store, 20-cv-7890 (JSR), and to promptly disburse those funds to The Primrose Lane, LLC. Because a preliminary injunction (granted as to other defendants following the TRO) remains pending in these actions with respect to other defendants, Smart Study is ordered to post an additional $5,400 bond to restore the bond to $10,000 by no later than Friday, December 11, 2020.

SO ORDERED.

Dated:    New York, NY
          December 7, 2020

JED S. RAKOFF, U.S.D.J.